**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

RONALD HALL; CHARLES MEYERS;   :
MOLLY MEYERS; ANDREA KASHISHIAN;   :
PETER FAZIO; and CAROLANN FAZIO,   :
individually and as parent and natural guardian for   :
PAULE FAZIO, DANIEL FAZIO, and   :
THOMAS FAZIO,   :
  :
       Plaintiffs,   :
  :
       v.   :
  :    Civil Action No. 03-2145 (JAG)
COUNTY OF PASSAIC; PASSAIC COUNTY   :
SHERIFF'S DEPARTMENT; EDWIN J.   :
ENGLEHARDT, individually and in his official   :    **O P I N I O N**
capacity; RONALD S. FAVA, individually and in   :
his official capacity; JOHN BONAZZI,   :
individually and in his official capacity; WILLIAM   :
MULLANAPHY, individually and in his official   :
capacity; KEVIN PISCITELLI, individually and in   :
his official capacity; SCOTT OJEDA, individually   :
and in his official capacity; and LOUIS   :
CAMACHO, individually and in his official   :
capacity,   :
  :
       Defendants.   :

---

**GREENAWAY, JR., U.S.D.J.**

      This matter comes before the Court on the motion of Defendant Ronald S. Fava

("Defendant Fava") to set aside an entry of default, pursuant to Rule 55(c) of the Federal Rules

of Civil Procedure (Docket No. 27), and on the motion of Plaintiffs Ronald Hall, Charles

Meyers, Molly Meyers, Andrea Kashishian, Peter Fazio, Carolann Fazio, Paule Fazio, Daniel

Fazio, and Thomas Fazio ("Plaintiffs") seeking: (1) a judgment of default against Defendant

Fava; (2) an extension of time to serve Defendant Louis Camacho ("Defendant Camacho"),

pursuant to Rule 4(m) of the Federal Rules of Civil Procedure; and (3) an order compelling Defendant County of Passaic ("Passaic County") to produce settlement documents for related lawsuits (Docket No. 32).  For the reasons set forth below, Defendant Fava's motion to set aside the entry of default will be granted, and Plaintiffs' motion will be denied as to their requests for a judgment of default and an extension of time to serve Defendant Camacho.  The Court will reserve decision on Plaintiffs' motion to compel disclosure of settlement information in possibly related lawsuits, and the parties are hereby ordered to submit letters to the Court, within fourteen days, detailing the status of this discovery request.

## **PROCEDURAL HISTORY**

On May 9, 2003, Plaintiffs filed a complaint seeking damages for the deprivation of constitutional rights under 42 U.S.C. § 1983, along with other state and federal claims.  As of August 11, 2004, most defendants had been served and had filed answers, except: (1) Defendant Camacho had not been served with the complaint; and (2) Defendant Fava, who sent his waiver of service on September 16, 2003, which was returned executed on March 29, 2004, never filed an answer.

On April 6, 2004, after Defendant Fava's failure to file an answer in response to Plaintiffs' complaint, Plaintiffs requested an entry of default, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  On April 7, 2004, the Clerk of the Court entered Defendant Fava's default.

On January 3, 2005, Defendant Fava filed the current motion to set aside the default entry, pursuant to FED. R. CIV. P. 55(c).  Plaintiffs filed a brief and an affidavit in opposition to Defendant Fava's motion.  Plaintiffs also filed, on January 21, 2005, a separate motion seeking: (1) an entry of a default judgment against Defendant Fava; (2) an extension of time to serve

2

Defendant Camacho; and (3) an order compelling Passaic County's disclosure of settlement information in relevant lawsuits.[1]

## FACTS

### A.    Defendant Fava

Defendant Fava maintains that, in September 2003, presumably after he signed his waiver of service, he contacted his attorney, Brian Neary, and faxed a portion of the complaint to Mr. Neary's office.  (Affidavit of Brian J. Neary ("Neary Aff."), at ¶ 1; Mem. of Law in Supp. of Def. Ronald S. Fava's Mot. to Set Aside Entry of Default ("Def.'s Br."), at 1.)  During the next few weeks, Mr. Neary was confused as to whether he had been formally retained by Passaic County to represent Mr. Fava in the instant matter.  (Neary Aff. ¶ 3; Def.'s Br. at 1.)  Apparently, Defendant Fava believed Mr. Neary had been retained, but Mr. Neary, who has represented Defendant Fava on behalf of Passaic County on at least one prior occasion, expected that additional paperwork was required (and forthcoming) in order for Passaic County to retain him formally on Defendant Fava's behalf.  (Neary Aff. ¶ 3; Def.'s Br. at 4.)  Due to this confusion and resulting inaction, Mr. Neary's staff inadvertently filed the complaint in a case file regarding a previous matter in which Mr. Neary had represented Defendant Fava on behalf of Passaic County.  (Neary Aff. ¶ 3; Def.'s Br. at 1.)  That previous matter was settled in January 2004, and the complaint in this action remained misplaced in that closed case file.  (Neary Aff. ¶¶ 1, 3; Def.'s Br. at 1.)

---

[1]  In Plaintiffs' notice of motion, they term their motion a "cross-motion" seeking an order from the Court granting the three forms of relief listed above, such that Plaintiffs have filed not only opposition to Defendant Fava's motion but also a separate cross-motion that seeks, among other things, a default judgment against Defendant Fava.  Although the arguments set forth in Plaintiffs' opposition and cross-motion largely overlap, this Court will treat Plaintiffs' "cross-motion" as an independent motion before the Court.

From the fall of 2003 through July 2004, Mr. Neary was involved in preparation for and trial of a complex fraud action before this Court.  (Neary Aff. ¶ 4; Def.'s Br. at 1.)  After the conclusion of the trial, Mr. Neary claims that he attempted to appear on behalf of Mr. Fava to rectify the default entry, and spent two months trying to contact Plaintiffs' counsel.  (Neary Aff. ¶¶ 7-9; Def.'s Br. at 1.)  When Mr. Neary spoke to Plaintiffs' counsel on September 27, 2004, he claims that Plaintiffs' counsel gave him the impression that he would consent to set aside the default entry, and Mr. Neary immediately faxed a draft stipulation so stating.  (Neary Aff. ¶ 9; Def.'s Br. at 1.)  Plaintiffs' counsel responded in early October that he would not consent. (Neary Aff. ¶ 10; Def.'s Br. at 1.)  Thus, Mr. Neary filed the instant motion to set aside the default entry on behalf of Defendant Fava.

Plaintiffs contend that Mr. Neary contacted Plaintiffs' counsel on or about August 13, 2004, and then, "a couple of months later," sent a stipulation to set aside the default entry. (Certification of Michael A. Zimmerman in Opp'n to Def.'s Mot. ("Zimmerman Opp'n Cert."), at ¶ 11; Pls.' Br. in Opp'n to Def. Fava's Mot. to Vacate His Default and Extend His Time to Ans. ("Pls.' Opp'n"), at 6.)  Plaintiffs agree that their counsel refused to consent to the stipulation.  (Zimmerman Opp'n Cert. ¶ 11; Pls.' Opp'n at 6.)

**B.     Defendant Camacho**

Plaintiffs seek an extension of time to serve Defendant Camacho with the complaint. Plaintiffs assert that Defendant Camacho avoided service either by deceiving Plaintiffs' counsel, or because Passaic County, who agreed to represent Defendant Camacho, did nothing on his behalf.  (Pls.' Br. in Supp. of Mot. for J. of Default; Extension of Time to Serve Defendant Louis Camacho; and to Compel Production of Settlement Information ("Pls.' Br."), at 13.)  Plaintiffs contend that, from May 2003 to September 2003, their counsel served notices of lawsuit and

requests for waiver of service of summons on Defendant Camacho four times.  (Pls.' Br. at 13.)

Plaintiffs argue that, on each of these four occasions, Defendant Camacho admitted that he

received those mailings, but never returned executed waivers.  (Pls.' Br. at 13.)  Plaintiffs

maintain that Defendant Camacho told their counsel that he had forwarded the paperwork to the

Deputy Warden, who then forwarded it to Passaic County Counsel.  (Zimmerman Opp'n Cert. ¶

5; Pls.' Br. at 13.)  Plaintiffs assert that, when their counsel thereafter contacted Passaic County

Counsel, the office stated that it would investigate the matter and respond.  (Pls.' Br. at 13-14.)

Plaintiffs contend that, when no response came, their counsel again contacted County Counsel

"to no avail."  (Pls.' Br. at 14.)  During the next eight months, however, Plaintiffs claim that

their counsel twice spoke with either Defendant Camacho or his wife, and each time Defendant

Camacho agreed to sign the waiver of service, only to renege on his agreement, never returning a

signed waiver.  (Pls.' Br. at 14.)  In their motion, now before this Court, Plaintiffs have requested

an extension of time to serve Defendant Camacho, pursuant to Rule 4(m) of the Federal Rules of

Civil Procedure.

## LEGAL STANDARD

### A.   Setting Aside an Entry of Default

The Federal Rules of Civil Procedure provide that, "[f]or good cause shown, the court

may set aside an entry of default and, if a judgment by default has been entered, may likewise set

it aside in accordance with Rule 60(b)."  FED. R. CIV. P. 55(c).  A decision to set aside an entry

of default or to vacate a default judgment is left to the sound discretion of the district court.  See

United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984).  The Third

Circuit Court of Appeals, however, does not favor entry of defaults or default judgments, but

rather prefers that doubtful cases be resolved in favor of the party moving to set aside the default

"so that cases may be decided on their merits." Id. (internal quotation marks and citations omitted).  The factors to be considered in granting or denying a motion to set aside a default under Rule 55(c) are: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." Id. at 195.

**B.    Extending Time for Service**

If a plaintiff has not obtained service upon a defendant within 120 days after filing the complaint, the plaintiff may file a motion requesting the court to extend time for service.  See FED. R. CIV. P. 4(m).  Rule 4(m) of the Federal Rules of Civil Procedure governs this practice, and states:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

When deciding whether an extension of time for service should be granted under Rule 4(m), the district court first must determine whether good cause exists for an extension.  See Petrucelli v. Bohringer and Ratzinger, GMBH, 46 F.3d 1298, 1305 (3d Cir. 1995).  The court's next step rests on the outcome of that initial determination: "If good cause is present, the district court must extend time for service and the inquiry is ended.  If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." Id.  The initial good cause determination is "a discretionary judgment to be exercised by the district court." Id. at 1306 n.9.

**DISCUSSION**

**A.**     **Defendant Fava's Motion to Set Aside the Entry of Default**

Defendant Fava argues that there is good cause to set aside the entry of default against

him because: (1) Plaintiffs will not be prejudiced by his late entry into the litigation; (2) he has a

meritorious defense under the theories of absolute and qualified immunity; and (3) the default

did not result from his own conduct, but rather from inadvertent neglect and confusion at his

lawyer's office.  (Def.'s Br. at 3-4.)

Plaintiffs argue that Defendant Fava's motion to set aside the default should be denied,

and that the entry of default should be converted into a default judgment.  (Pls.' Opp'n at 6.)

Plaintiffs contend that: (1) Plaintiffs will be prejudiced substantially by Defendant Fava's late

entry, due to the passage of time and the appearance of all other defendants for depositions; (2)

Defendant Fava has not articulated a meritorious defense; and (3) inexcusable neglect of the

action by Defendant Fava's counsel resulted in the entry of default.  (Pls.' Opp'n at 7-10.)

For the reasons stated below, this Court finds that Defendant Fava has shown the

requisite good cause to set aside the entry of default.  Therefore, Defendant Fava's motion will

be granted.  Plaintiffs' motion, insofar as it requests that the entry of default be converted into a

default judgment, will be denied as moot.

**1.     Prejudice to Plaintiffs**

This Court finds that setting aside the entry of default will not prejudice Plaintiffs.

Defendant Fava argues that Plaintiffs cannot show that they would be prejudiced by the

setting aside of the entry of default because: (1) discovery is still continuing and Plaintiffs have

proceeded as if Defendant Fava had been participating in the litigation; and (2) since Defendant

Fava is similarly situated to the other defendants, "none of his arguments or positions will come

7

as a surprise [to] [P]laintiffs."  (Def.'s Br. at 3.)

Plaintiffs maintain that they will suffer substantial prejudice by Defendant Fava's late entry.  (Pls.' Br. at 7-9).  Plaintiffs assert that prejudice results from: (1) the passage of nineteen months between the filing of the complaint and Defendant Fava's motion, and the appearance of the other defendants for depositions within that time; (2) another extension, for the fourth time, of the deadline for discovery, in order for Plaintiffs to depose Defendant Fava and to retake the depositions of the other defendants; (3) the fact that Plaintiffs have relied upon the default; and (4) Defendant Fava's dissimilarity to the other defendants.  (Pls.' Br. at 7-9.)

A court may find prejudice where a plaintiff's ability to pursue the claim has been hindered by the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the default.  See Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982).  "Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the [setting aside of an entry of default] at an early stage of the proceeding."  Id. at 656-57.  "The fact that a plaintiff will have to litigate an action on the merits rather than proceed by default does not constitute prejudice."  Choice Hotels Int'l, Inc. v. Pennave Assoc., Inc., 192 F.R.D. 171, 174 (E.D. Pa. 2000).

Plaintiffs have not demonstrated that they will be prejudiced by any loss of available evidence resulting from setting aside the default.  Plaintiffs argue that they will be prejudiced by a necessary fourth extension of the discovery deadline so that they may take Defendant Fava's deposition and retake the depositions of the other defendants as they relate to the claims against Defendant Fava.  (Pls.' Opp'n at 7-8.)  Having to retake depositions does not demonstrate loss of evidence.  To the extent that Plaintiffs argue that the claims against Defendant Fava are similar to the claims against the other defendants, (Pls.' Opp'n at 8), the evidence collected at Defendant

Fava's deposition will be similar to the evidence collected at the depositions of the other defendants, and thus, there will be no "loss" of evidence.  To the extent that Plaintiffs argue that the claims against Defendant Fava are not similar to the claims against the other defendants, Plaintiffs will not have to retake depositions on these points since they "do not involve the other defendants."  (Pls.' Opp'n at 9.)  While the reintroduction of Defendant Fava undoubtedly will impose new, additional burdens on Plaintiffs, this Court cannot conclude that this would work prejudice to Plaintiffs.

Setting aside a default sometimes raises concerns that prejudice will result from increased potential for fraud or collusion.  See Feliciano, 691 F.2d at 657.  Here, however, Plaintiffs do not suggest that granting Defendant Fava's motion might heighten the potential for fraud.  In addition, the potential for collusion regarding defenses appears unlikely to be affected, since, as Plaintiffs state, "it is not accurate to argue that [Defendant] Fava is similarly situated to the other defendants by virtue of his defenses to the action." (Pls.' Opp'n at 8.)  Thus, this Court does not find any increased potential for fraud or collusion will result from setting aside the default.

Plaintiffs also assert that Defendant Fava's motion should be denied because they have come to rely on Defendant Fava's default, as he "[did] nothing about the entry of default against him for a total of nine months." (Pls.' Opp'n at 8.)  "Nothing" seems to exaggerate the point here.  Defendant Fava's counsel, Mr. Neary, stated that he attempted to contact Plaintiffs' counsel in July of 2004, three months after the entry of the default on April 7, 2004.  (Def.'s Br. at 1.)  Plaintiffs admit that Mr. Neary contacted their counsel "on or about August 13, 2004," and documents attached to their opposition brief show that Mr. Neary spoke with Plaintiffs' counsel in late September of 2004.  (Pls.' Opp'n at 6; Ex. C to Cert. of Michael A. Zimmerman in Opp'n

to Def.'s Mot. ("Zimmerman Opp'n Cert.")).  Therefore, it appears that Plaintiffs were notified as early as July 2004, and at least by late September 2004, that Defendant Fava and his counsel were attempting to address the default that had been entered against him.  Even though Defendant Fava did not file his motion to set aside the default until January 3, 2005, Plaintiffs cannot argue that they relied on Defendant Fava's inaction for "nine months," since it appears that they were aware that Defendant Fava was attempting to address this matter as early as July 2004, and at the latest, by September 2004.

Plaintiffs maintain that their reliance on Defendant Fava's default specifically led them not to ask the other defendants questions about Defendant Fava's conduct in their depositions of the other defendants.  (Pls.' Opp'n at 8.)  Since Plaintiffs maintain that various claims against Defendant Fava do not involve the other defendants, (Pls.' Opp'n at 9), this Court finds that Plaintiffs will not be prejudiced by the fact that they decided not to ask questions about Defendant Fava in the initial depositions, particularly where it appears that they anticipate re-deposing witnesses as necessary.  (Pls.' Opp'n at 8-9.)

Finally, Plaintiffs argue that they will be prejudiced by having to wait even longer "for a resolution to their complaint."  (Pls.' Opp'n at 7.)  First, as stated previously, Plaintiffs cannot establish prejudice by arguing delay in realizing satisfaction of their claim.  See Feliciano, 691 F.2d at 656-57.  Second, Plaintiffs separately moved this Court for an extension of time to serve Defendant Camacho, if default against Defendant Fava is set aside.  Plaintiffs' asserted desire for a speedy resolution is less persuasive where they have opened the door for extended proceedings.  Extending time to serve Defendant Camacho arguably would extend the case even longer than the time it will take for Defendant Fava to answer and appear for a deposition.

Thus, this Court finds that setting aside the default will not result in prejudice to Plaintiffs.

2.     **Meritorious Defense**

Defendant Fava argues that he has a meritorious defense in that "[a]s a county employee, acting in good faith within the scope of his employment, he is immune under the theories of absolute and qualified immunities [sic] as well as under the Eighth Amendment."  (Def.'s Br. at 3-4.)  Defendant Fava further argues that, aside from immunity, he "denies engaging in conduct that caused the alleged harm to the plaintiffs."  (Def.'s Br. at 4.)

Plaintiffs argue that, because "Mr. Neary has not provided an affirmation from Ronald Fava to enunciate the actual good faith defense and/or the bases for his denial of any conduct on his part that has caused the harm to the plaintiff(s)," "a mere recitation by counsel of the defenses" does not suffice to show a meritorious defense.  (Pls.' Opp'n at 9.)

This Court finds that Defendant Fava has articulated a sufficiently meritorious defense which warrants setting aside the entry of default.

Showing a meritorious defense is a critical issue because, without a meritorious defense, the party in default could not prevail at trial.  Therefore, there would be no point in setting aside the default.  See $55,518.05 in U.S. Currency, 728 F.2d at 195.  "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established on trial, would constitute a complete defense to the action."  Id. (internal quotation marks and citation omitted); see also 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 55.50[1][b][ii] (3d ed. 2005) (stating that "the defendant must allege specific facts that, if proved at trial, would constitute a defense to the claim asserted").

11

In the complaint, Plaintiffs allege that Defendant Fava, "acting within the scope of his employment by defendants, County of Passaic," "through coercion, threats, intimidation and retaliation, required that the employees of the Passaic County Sheriff's Department participate in Republican candidates' political campaigns and do related work while on and off duty." (Complaint ("Compl."), at ¶¶ 17, 34.)  In the complaint, Plaintiffs claim violations of their constitutional rights under 42 U.S.C. §§ 1983 and 1985, violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. STAT. ANN. § 34:19-1, et seq., violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., violations of the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and the New Jersey Right to Know Law, N.J. STAT. ANN. § 47:1A-1, and loss of consortium due to the violation of these constitutional and statutory rights.  (Compl. ¶¶ 125-209.)  Although Plaintiffs do not name Defendant Fava explicitly in every count of the complaint, apparently, in light of their description of the parties and "general facts," Plaintiffs intend to implicate Defendant Fava in all of the major statutory claims in the case.  (Compl. ¶¶ 9-43.)

Defendant Fava argues that his absolute and qualified immunities, along with his denial of engaging in the alleged conduct, constitute a complete and meritorious defense to the action. (Def.'s Br. at 3-4.)[2]

In seeking a defense of absolute immunity, the official must show that "such immunity is justified for the function in question."  Buckley v. Fitzsimmons, 509 U.S. 259, 270 (1993).  In establishing a defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

---

[2]  Defendant Fava sets forth a proposed answer at Exhibit A to his letter reply in support of his motion.

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999) ("A municipal official sued in his individual capacity enjoys qualified immunity if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks and citation omitted).

Plaintiffs have admitted, in the complaint, that at all times relevant, "Defendant Ronald S. Fava was acting within the scope of his employment by defendants, County of Passaic." (Compl. ¶ 17.)  If Defendant Fava can establish that he is entitled to either absolute or qualified immunity, based upon his actions taken in good faith within the scope of his employment, he will have a complete defense to the action.  See, e.g., Buckley, 509 U.S. at 270; Harlow, 457 U.S. at 818; Doe v. County of Centre, Pa., 242 F.3d 437, 454-55 (3d Cir. 2001) (holding that government officials had qualified immunity in ADA case).  If Defendant Fava can establish that he is immune from liability for Plaintiffs' constitutional and statutory claims, then Defendant Fava also will have a complete defense to Plaintiffs' claim of loss of consortium, as it is a derivative claim, dependent upon the survival of the substantive claims.  See Maudsley v. State, 816 A.2d 189, 207 (N.J. Super. Ct. App. Div. 2003) (holding that "[a] per quod [loss of consortium] claim is only maintainable by reason of a spouse's personal injury and depends upon and is incidental to the spouse's personal injury action") (citing Rex v. Hutner, 140 A.2d 753, 754 (N.J. 1958)); see also Bergfield v. Unimin Corp., 226 F. Supp. 2d 970, 983 (N.D. Iowa 2002) (holding that a claim for loss of consortium cannot lie where the defendant is not liable as a matter of law to the injured spouse in the first instance), aff'd, 319 F.3d 350 (8th Cir. 2003).

Thus, this Court finds that Defendant Fava has articulated a meritorious defense

sufficient to justify setting aside the default.

### 3.    Culpable Conduct

Defendant Fava argues that the default did not result from Defendant Fava's own culpability, and that he "should simply not be punished for the inadvertent neglect of this case and confusion at his lawyer's office."  (Def.'s Br. at 4.)

Plaintiffs argue that Mr. Neary's neglect of the case is inexcusable.  Plaintiffs contend that Mr. Neary attempts to confine the issue of neglect to confusion regarding his retainer, and omits other facts that show his intentional, bad faith neglect of the case.  Plaintiffs assert that even though the action was misfiled for many months, and Mr. Neary was involved in two complex federal trials, Mr. Neary was constantly reminded of this action because he was carbon copied on "many of the items that had been sent by mail to opposing counsel and/or the Court from Plaintiff's [sic] counsel."  (Pls.' Opp'n at 9-10.)

This Court finds that the entry of default did not result from Defendant Fava's culpable conduct, and Mr. Neary's neglect of the case was excusable and remedied within sufficient time to justify setting aside the entry of default.

This third and final factor in the default context—whether the default resulted from the defendant's culpable conduct—focuses on "whether [the defendant] acted willfully or in bad faith."  Feliciano, 691 F.2d at 657.  It does not appear that Plaintiffs intend to argue that Defendant Fava acted willfully or in bad faith.  Plaintiffs admit, in their opposition brief, that "Defendant Fava believed that Mr. Neary was representing him."[3]  (Pls.' Opp'n at 10.)  Rather,

_____

[3]  Plaintiffs' counsel asserts in his certification that, as an attorney himself, Defendant Fava "was well aware that his attorney had not appeared on his behalf, but took only the most minor steps to rectify his default."  (Zimmerman Opp'n Cert. ¶ 13.)  Mr. Zimmerman contends that Defendant Fava "surely new [sic] that the lawsuit continued as there were articles in the

Plaintiffs seem to contend that default should be set aside because Mr. Neary's neglect of the action amounts to willfulness or action in bad faith.  (Pls.' Opp'n at 10.)  This Court disagrees.

Generally, when the default results from the conduct of a party's attorney, rather than the party himself, courts have been more lenient in setting aside entries of default.  See, e.g., Smith v. Widman Trucking & Excavating, Inc., 627 F.2d 792, 796 (7th Cir. 1980) (asserting that "courts are reluctant, under certain circumstances, to attribute to a client the mistakes of his attorney"); A.C. Samford, Inc. v. United States, 226 F. Supp. 72, 76 (M.D. Ga. 1963) (commenting that "the courts have been reluctant to attribute to the parties the errors of their legal representatives") (internal quotation marks and citation omitted).  In addition, here, Mr. Neary contends that initial confusion regarding his retainer, coupled with the misplacement of the complaint in a closed file for the same client, and his preoccupation with the trial of another complex case before this Court resulted in the entry of default against Defendant Fava.  (Def.'s Br. at 4-5.)

This Court finds that, under the circumstances, Mr. Neary's neglect of this case should be excused and should not be held against Defendant Fava.  First, Mr. Neary claims that he attempted to rectify the default in August 2004, four months after the default *entry*.  He contends that any delay that can be attributed to him should be excused in light of the fact that Rule 60(b)

---

newspapers, he regularly spoke to Defendant Englehardt and he is part of the legal community." (Zimmerman Opp'n Cert. ¶ 13.)  Mr. Zimmerman also references a letter that Defendant Fava wrote to Mr. Neary on December 17, 2003, in which he expressed concern that correspondence sent to him by Mr. Zimmerman was addressed directly to Defendant Fava, "as if I am representing myself in this matter."  (Ex. F to Zimmerman Opp'n Cert.)  This letter, along with Mr. Zimmerman's allegations of Defendant Fava's knowledge of the lawsuit, do not detract from the notion that Defendant Fava believed Mr. Neary was representing him in this case, nor do they establish any willfulness or bad faith on Defendant Fava's part.

of the Federal Rules of Civil Procedure permits parties to seek relief from a default *judgment* within one year after the judgment.  See FED. R. CIV. P. 60(b).  Considering the less stringent standard to be employed in cases seeking the removal of a default entry, as opposed to that which authorizes a court to grant relief from a default judgment, see Feliciano, 691 F.2d at 656, this Court finds that the four month delay in this case is not so unreasonable as to prevent setting aside the default entry.

Second, Plaintiffs did not seek a default judgment until after Defendant Fava filed a motion to set aside the default.  Thus, it appears that Plaintiffs were in no rush to obtain a default judgment against Defendant Fava.[4]  Third, the default occurred as a result of the neglect of Defendant Fava's attorney, not Defendant Fava himself.  Finally, the standard for Rule 55(c) is

---

[4]Plaintiffs maintain that their attorneys did not file a motion for the entry of a default judgment against Defendant Fava earlier than their instant motion "because [they] were seeking procedural advice from the Court concerning the procedure to request the conversion of the entry of Defendant Fava's default into a judgment of default."  (Pls.' Opp'n at 7 n.1.)  Plaintiffs contend that:

> Counsel made at least four oral attempts over the last several months.  Unfortunately, Court personnel did not know, did not respond, or directed us elsewhere in the courthouse.  In light of the motion to vacate the entry of default, [P]laintiff's [sic] counsel opined that a cross-motion for the judgment of default was in order.

(Pls.' Opp'n at 7 n.1.)

Although it is difficult, at this juncture, to draw any conclusions about what "procedural advice" Plaintiffs sought by their oral requests, this Court notes that Rule 55(b)(2) plainly states that a party seeking a default judgment "shall apply" to the court for such relief.  FED. R. CIV. P. 55(b)(2).  To the extent this language is vague, it is no more vague than that governing the entry of default, which may be obtained "by affidavit or otherwise."  FED. R. CIV. P. 55(a).  This Court will not entertain Plaintiffs' attempt to shift responsibility to the Court, when the Federal Rules of Civil Procedure make it clear that Plaintiffs were free during the period from April 2004 to January 2005 to file a motion with this Court requesting a judgment by default.  Thus, this Court considers it relevant that Plaintiffs chose not to file a motion requesting a default judgment until Defendant Fava filed a motion requesting that the entry of default be set aside.

more lenient with respect to setting aside a default entry than with regard to vacating a default judgment pursuant to Rule 60(b), and, generally, courts prefer the adjudication of claims on their merits rather than by default.  See $55,518.05 in U.S. Currency, 728 F.2d at 194.

This Court finds that setting aside the entry of default against Defendant Fava will not prejudice Plaintiffs, that Defendant Fava has articulated a possibly meritorious defense, and that the default did not occur as a result of Defendant Fava's culpable conduct.  Therefore, this Court will grant Defendant Fava's motion to set aside the default entry against him.

**B.      Plaintiffs' Motion for an Extension of Time to Serve Defendant Camacho**

Plaintiffs argue that "[i]f Defendant Fava is found to have an excusable reason for the default then Plaintiffs should be permitted additional time to serve Defendant Camacho" because they can show good cause.  (Pls.' Br. at 19.)  Plaintiffs assert that their four attempts to obtain a waiver from Defendant Camacho, coupled with Plaintiffs' counsel's orthopedic condition during the time period of this suit, constitute good cause for their failure to serve and, thus, an extension should be granted.  (Pls.' Br. at 20.)

The Third Circuit Court of Appeals has determined that, under Rule 4(m) of the Federal Rules of Civil Procedure, a court is required to extend time for service if good cause for the failure to serve is shown.  See Petrucelli, 46 F.3d at 1305.  Absent such a showing, a court has the discretion to dismiss the claim or suit or to extend time for service notwithstanding.  Id. at 1305.  This Court finds that Plaintiffs have not shown good cause for their failure to serve Defendant Camacho.  While it does appear that Plaintiffs made repeated attempts to obtain the waiver from Defendant Camacho, it should have been clear after the passage of fifteen months (Pls.' Br. at 13-14; Zimmerman Cert. in Supp. of Pls.' Br. ¶¶ 14-19) that Defendant Camacho would not be executing the waiver.  Reasonable care and diligence would have required further

17

inquiry when it was obvious that the waiver was not forthcoming.  See Petrucelli, 46 F.3d at 1307.  Furthermore, Plaintiffs also claim that they relied, for a significant period of time, upon the assurances of Passaic County Counsel that it intended "to investigate the matter and to respond." (Pls.' Br. at 14.)  The Third Circuit Court of Appeals has held that "reliance upon a third party . . . is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service." Petrucelli, 46 F.3d at 1307.

Also, the time period in which Plaintiffs were to serve Defendant Camacho expired in September 2003.  Plaintiffs did not file a motion requesting an extension of time for service until they filed this motion on January 21, 2005.[5]  Furthermore, even though Plaintiffs appear to be requesting an extension of time to serve Defendant Camacho contingent upon this Court's setting aside the default, this Court cannot ignore Plaintiffs' reliance on self-serving arguments in both instances.  In opposing the setting aside of default, Plaintiffs complain of the passage of time, reliance upon Defendant Fava's absence from the case, and delay in resolution of their case.  (Pls.' Opp'n at 7-8.)  In support of their application for an extension of time to serve Defendant Camacho, however, Plaintiffs request additional time to include "all defendants and all of their discovery in this case," notwithstanding the added delay this action would incur.

---

[5]  Plaintiffs assert that the office of their counsel "tried twice, once by letter and once orally in Court, to raise this issue with the Court but was inadvertently given no guidance on the subject." (Pls.' Br. at 20-21.)  Plaintiffs appear to be referring to a letter to Magistrate Judge Haneke from Mr. Zimmerman, dated May 26, 2004, requesting an extension of the time for discovery and leave of court to serve Defendant Camacho.  (Ex. H to Pls.' Br.)  Thus, it appears that Plaintiffs did not even raise this issue with the Court until eight months after the expiration of the time period for service.  Regardless of whether Plaintiffs were "given no guidance" on this subject, Plaintiffs were free to file a formal motion requesting, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, an extension of time to serve Defendant Camacho.  Plaintiffs did not do so until January 21, 2005, when they filed the motion now pending before this Court.

(Pls.' Br. at 21.)  Due to the divergence in Plaintiffs' satisfaction with additional time delay based solely upon which motion is at issue, this Court cannot conclude that Plaintiffs have established good cause to permit an extension of time to serve.

Finally, Plaintiffs argue that Mr. Zimmerman's illness suffices to show good cause for the failure to serve Defendant Camacho.  (Pls.' Br. at 20.)  Although this Court ordinarily would be inclined to accommodate counsel to the extent possible on grounds of illness, this Court cannot overlook the fact that Mr. Zimmerman has advocated on behalf of his clients vigorously throughout this case in all other respects–with regard to meeting discovery deadlines, scheduling and taking depositions, and obtaining extensions of time for discovery.  (See Letter to Magistrate Judge Haneke, dated May 26, 2004, Ex. H to Pls.' Br.; Letter to Magistrate Judge Haneke, dated August 3, 2004; Zimmerman Cert. in Opp'n to Mot. of Gerald Speziale to Quash Pls.' Subpoena ¶ 4.)  During the time that Mr. Zimmerman was preoccupied with his illness and with trying to serve Defendant Camacho, Mr. Zimmerman apparently also attempted, albeit unsuccessfully, on four separate occasions, to obtain the waiver of service from Defendant Camacho.  (Pls.' Br. at 13.)  It appears that Plaintiffs made only one passing request to the Court, in a letter dated one year after the complaint was filed, for an extension of time to serve Defendant Camacho (Ex. H to Pls.' Br.), and did not pursue the issue when they did not receive a response.  Thus, this Court finds that Plaintiffs have not shown good cause for their failure to timely serve Defendant Camacho.

Plaintiffs argue that "[e]ven if good cause was not present, the district court must consider whether any other factors warrant an extension of time."  (Pls.' Br. at 20) (citing Veal v. United States, 84 Fed. Appx. 253, 255-56 (3d Cir. 2004); Petrucelli, 46 F.3d at 1307).  Plaintiffs assert that "[o]ne important example of another factor which would 'frequently weigh in favor of

exercising discretion' is whether the statute of limitations has run on the claim, which has occurred in this case."  (Pls.' Br. at 20) (citing <u>Veal</u>, 84 Fed. Appx. at 256).  The <u>Petrucelli</u> court stated that:

> [T]he running of the statute of limitations does not require the district court to extend time for service of process.  Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred.

<u>Id.</u> at 1306.

This Court notes that the fact that the statute of limitations has run on the claim against Defendant Camacho and that Plaintiffs contend that he is "evading service" are possible factors bearing upon a discretionary extension of time for service.  (Pls.' Br. at 20.)  Regardless of whether service upon Defendant Camacho failed due to evasion, counsel's illness, or this Court's failure to offer "procedural advice," Plaintiffs would have been content to proceed in this litigation without Defendant Camacho had Defendant Fava's default been upheld.  (Pls.' Br. at 21) ("If Defendant Fava's default is not vacated and if judgment is entered against him, then the action should simply continue against the remaining defendants.").  Thus, it appears that Plaintiffs seek the chance to obtain such a judgment only as consolation for having to litigate their claims against Defendant Fava as well.

This Court finds that Plaintiffs have not presented the requisite good cause to merit an extension of time to serve Defendant Camacho, nor do other factors warrant this Court's discretionary grant of an extension.  Therefore, Plaintiffs' motion for an extension of time to serve Defendant Camacho will be denied.

## **CONCLUSION**

For the foregoing reasons: (1) Defendant Fava's motion to set aside the default entry

against him is granted; (2) Plaintiffs' motion for judgment of default against Defendant Fava is denied as moot; and (3) Plaintiffs' motion for an extension of time to serve Defendant Camacho is denied, and Defendant Camacho is dismissed from this case without prejudice, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  This Court will reserve decision on Plaintiffs' motion to compel production by the defendants of settlement information in possibly related lawsuits.  The parties are hereby ordered to submit letters (no more than 2 pages in length) advising the Court of the status of this discovery request within 14 days of the entry of this Court's Order.  Furthermore, Defendant Fava is ordered to file his answer, or otherwise respond to the complaint, within 30 days of the entry of this Court's Order.

DATED:   August 23, 2005

                    S/Joseph A. Greenaway, Jr.
                    JOSEPH A. GREENAWAY, JR., U.S.D.J.

21